586 A.2d 366

**Michael PALYOK, Appellant,**

**v.**

**BOROUGH OF WEST MIFFLIN, Jack Bergman, Theresa Corso, Joseph Mahoney and Irene Parkinson, Members of West Mifflin Police Pension Fund, Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 28, 1990.

Decided Feb. 4, 1991.

Ronald P. Koerner, Pittsburgh, for appellant.

Donald C. Fetzko, West Mifflin, for appellees.

Before NIX, C.J., LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

McDERMOTT, Justice.

On May 1, 1985, appellant, Michael Palyok, retired after serving twenty-seven (27) years as an officer on the police force of appellee Borough of West Mifflin, Allegheny County (Borough). Upon retirement, appellant became eligible for pension benefits pursuant to a series of ordinances adopted by the Borough in accordance with the Act of May 29, 1956, P.L. (1955), 1804 *et seq., as amended;* 53 P.S. § 767 *et seq.*, commonly referred to as the Police Pension Fund Act (Act).[1] The dispute in the instant case involves the proper formula to be used in determining the amount of monthly pension benefits to which the appellant is entitled. More specifically, the issue presented is whether the word "salary," as used in the Act for purposes of determining

---

1. In 1957, the Borough passed Ordinance No. 313, establishing a police pension plan, as enabled by the Act. The pension plan was amended twice prior to appellant's retirement, by Ordinance No. 577 of 1966 and Ordinance No. 744 of 1973.

monthly pension benefits, encompasses basic salary alone or basic salary *and* overtime pay and "extra work" pay.[2] The relevant portion of the Act provides as follows: "Monthly pension or retirement benefits other than length of service increments shall be computed at one-half the monthly average *salary* of such member during not more than the last sixty nor less than the last thirty-six months of employment." (emphasis supplied). 53 P.S. § 771. The word "salary" is not defined in the statute.

The pertinent facts of the case *sub judice* have been stipulated to by the parties as follows. During the last thirty-six (36) months of his employment,[3] appellant earned a total gross compensation in the amount of $96,835.76, which compensation consisted of $86,727,65 basic pay, $1,429.88 overtime and $8,678.23 extra work pay. From the gross compensation, including the overtime and extra work pay, the Borough withheld the required amounts for federal and state taxes and Social Security and deducted additional amounts as appellant's contribution toward the pension fund.[4] The Borough, in calculating appellant's monthly pension benefits, used only his basic pay during the last

2. "Extra work," in this context, is the nomenclature used to describe police services such as traffic and crowd control periodically requested by Borough individuals or businesses. For these extra services, the individuals or businesses pay the Borough a flat rate per hour for each officer used. The Borough, in turn, pays the officers who performed the extra services an hourly rate as gross pay, from which the Borough deducts withholding taxes, Social Security and pension contributions. It is not clear from the record whether the extra work pay is paid at the same time as the basic pay and/or overtime pay. Extra work is performed on a purely voluntary basis and is administered in conjunction with the police union, which keeps a roster of police officers who desire the extra work.

3. On May 8, 1986, the Borough further amended the pension plan pursuant to Ordinance No. 923. This ordinance reduced the base period used to compute pension benefits from the last sixty (60) months of employment to the last thirty-six (36) months of employment. Under the extant collective bargaining agreement between the Borough and the police union, appellant's pension benefits were to be based on his last thirty-six (36) months of his employment, notwithstanding that he retired prior to the date the aforesaid ordinance was passed.

4. The pension fund is partially funded by mandatory contributions from the members. *See* Section 6 of the Act, 53 P.S. § 772.

thirty-six (36) month period (i.e. $86,727.65) and excluded his overtime and extra work pay. Based upon the Borough's calculations, appellant is currently receiving monthly pension benefits in the amount of $1204.55. If the pension benefits were computed using basic pay *and* overtime and extra pay, as appellant contends the Act demands, his monthly pension benefits would be $1344.94.

Appellant filed an action in the Court of Common Pleas of Allegheny County seeking to force the Borough to include overtime and extra work pay in the calculation determining his monthly benefits. The trial court found for the Borough, notwithstanding the court's acknowledgement that requiring appellant to contribute to the pension fund based on his gross compensation, including overtime and extra work pay, while calculating his pension using only his basic pay was an apparent inequity. The court felt compelled to reach that decision based on the Commonwealth Court's previous interpretation of the Act in *Borough of Beaver v. Liston*, 76 Pa.Cmwlth. 619, 464 A.2d 679 (1983). In *Liston*, like the instant case, the issue presented was whether the word "salary," as used in the Act, should include overtime pay. Unlike the instant case, however, the retiree in the *Liston* case did not have pension fund contributions deducted from his overtime pay. The Commonwealth Court, in *Liston*, held that the word "salary" encompassed only basic pay and not overtime pay. In deciding the appeal of the instant case, the Commonwealth Court held that the *Liston* case was controlling as to the question presented,[5] notwithstanding the factual difference concerning the deductions from appellant's overtime pay toward the pension fund. 122 Pa.Cmwlth. 25, 551 A.2d 622. That decision was in error and we now reverse.

Although this Court has not previously interpreted the word "salary" as used in the Act, we have addressed a very

---

**5.** The Court distinguished between overtime pay and the extra work pay. Since the work involved in both categories is official in nature, we see no reason to distinguish between the pay categories. *See Rockwell v. York County Retirement Board,* 405 Pa. 406, 175 A.2d 831 (1961).

similar circumstance in *Rockwell v. York County Retirement Board,* 405 Pa. 406, 175 A.2d 831 (1961). In *Rockwell,* we determined that a court stenographer's retirement benefits, under the relevant pension fund act,[6] should be computed based on the stenographer's salary *and* folio and transcript fees rather than the basic salary alone. Our rationale in that case was that the folio and transcripts fees were payments "arising from business connected with the court." *Id.,* 405 Pa. at 414, 175 A.2d at 835. This rationale obtains in the instant case as well. In performing overtime and extra work, appellant was carrying on the same governmental business he performed in earning his basic salary i.e. protecting the public weal. We see no reason to treat the compensation received for these additional governmental services any differently than the compensation received for the regularly scheduled duties.

Moreover, by deducting retirement fund contributions from the overtime and extra work pay, the Borough implicitly acknowledges the similarity between the regularly scheduled work and the additional work. To permit the Borough to require contributions from the overtime and extra work compensation while denying the advantage of the additional compensation in the benefit formula would be inconsistent and inequitable. *See York Paid Firemen's Pension Fund Board v. Orendorff,* 53 Pa.Cmwlth. 629, 419 A.2d 232 (1980). Absent a clear legislative intent to create such a situation, we will not interpret it into existence.

We reverse and remand to the trial court for action consistent with this opinion.

CAPPY, J., did not participate in the consideration or decision of this matter.

---

6. Act of July 8, 1941, P.L. 298, *as amended,* 16 P.S. 11561 *et seq.*